EPHRAIM ARNOLD *vs.* CHANDLER SABIN.

The next of kin of one deceased intestate suffered thirty days to elapse after his death, without taking any measures to obtain administration of his estate: A creditor of the intestate then applied, by petition, to the judge of probate, to be appointed administrator, and the judge ordered public notice to be given (which was done) to all persons interested in the estate of the intestate, to appear and show cause why the prayer of the petition should not be granted: At the time and place appointed by the notice, the father of the intestate appeared, for the purpose of objecting to the petition, and being inquired of by the judge, whether he wished to take the administration, replied that he would have nothing to do with it: The judge of probate thereupon proceeded, and granted administration to the petitioner, and the father appealed : It was held, that the declaration of the appellant, not being recorded, was not an effectual renunciation, and that such public notice, especially as the appellant had actual notice and appeared, was sufficient.

The demand of a creditor, applying for administration of the estate of an intestate, under the Rev. Sts. *c.* 64, § 4, *cl.* 2, on the neglect or refusal of the next of kin, may be proved by his book of accounts and suppletory oath.

THIS was an appeal from a decree of the judge of probate, appointing the appellee administrator of the estate of Arba Arnold.

It appeared, that Arba Arnold, of Belchertown, died about two years before the commencement of these proceedings in the probate court, intestate, leaving no widow or lineal descendant ; and that on the second Tuesday of May, 1847, the appellee was appointed administrator, on the ground, as set forth in his petition, that the intestate left estate of which administration was necessary, and that the appellee was a creditor, and as such entitled to the administration.

The reasons of appeal were :

1. That the intestate left no widow or lineal descendant; that the appellant was his father, and had not voluntarily taken or renounced the administration ; and that living within the county, he had never been cited by the judge for that purpose.

2. That the appellee was not, in fact, a creditor of the intestate.

On the hearing in this court, before *Dewey,* J., it appeared, in reference to the *first* reason, that no citation was issued and served on the appellant, and that the only notice ever

given to him, of the pendency of the appellee's petition, was a general public notice, to all persons interested in the estate of the intestate, to appear and show cause, &c.

It appeared, also, by the testimony of the judge of probate, that, at the time when the appellee was appointed, the appellant was present, and was inquired of by the judge whether he wished to take the administration; to which the appellant replied, that he would have nothing to do with it, or in words to that effect.

The appellant contended, that the notice was not sufficient; but that there should have been a citation issued and directed to and served upon him, stating the time and place, when and where the petition of the appellee was to be acted upon; and that he was not barred from prosecuting his appeal, by reason of any act or declaration made by him to the judge of probate; he not having made any written renunciation of his right to administer upon the estate of his deceased son.

The judge ruled, that after the general public notice in the newspaper, and the acts and declarations of the appellant, as testified to by the judge of probate, the appellee, as a creditor, might properly be appointed administrator.

As to the *second* reason of appeal, namely, that the appellee was not in fact a creditor of the intestate, the appellee produced his book of accounts, and made oath to a charge therein, against the intestate, of fifty-eight cents, for repair of a wagon. The appellee testified further, that the entry of this charge on his book was an original entry, made at the time of its date; that he presumed, though he could not say, that it was first put upon a slate; that he was in the practice of making entries on a slate, but could not swear that he made this entry; that if he himself did not make it, it was made by one Smith, who worked for him at the time; and that when he returned home, after being absent, and found charges on the slate, he transferred them to his book.

The appellant objected to the competency of this evidence to prove that the appellee was a creditor of the intestate. But the judge overruled the objection, received the evidence as

competent, and decided that it was sufficient to prove that the appellee was a creditor of the intestate, to the amount of the charge of fifty-eight cents.

The judge thereupon affirmed the decree of the probate court, appointing the appellee administrator of the estate of Arba Arnold, and the appellant filed exceptions.

*E. G. Bowdoin*, for the appellant. 1. The acts and declarations of one, who is entitled by law, as the appellant was, (Rev. Sts. c. 64, § 4, *cl.* 2,) to the administration, are not equivalent to a renunciation, which cannot be effected by an act *in pais*, but only by some instrument in writing, duly entered and recorded. Bac. Abr. Executor, &c.; *Stebbins* v. *Lathrop*, 4 Pick. 33, 44; *Chase* v. *Hathaway*, 14 Mass. 222; Rev. Sts. c. 83, § 7; White Prob. Courts, 47. The process should have been a citation in the usual form. *Cobb* v. *Newcomb*, 19 Pick. 336; Rev. Sts. c. 65, § 7; c. 93, §§ 3, 4, 5; c. 109, § 64; c. 79, § 2; c. 63, § 7; c. 67, § 9. The insolvent acts, generally, contain similar provisions as to citation.

2. The testimony of the appellee was inadmissible. Smith's was the better evidence, and he should have been called.

*C. Delano & I. F. Conkey*, for the appellee.

1. The statute (Rev. Sts. c. 64, § 4) does not, in terms, require that the renunciation should be in writing; what took place in the probate court was sufficient. If a citation were necessary, then each of the next of kin must be cited. But the want of notice, whatever its effect, was waived by the appearance of the appellant. *Fox* v. *Hazelton*, 10 Pick. 275, *Simonds* v. *Parker*, 1 Met. 508. In this case, there was not only an appearance, but an express declaration by the appellant, that he would have nothing to do with the administration. The first clause of § 4, above cited, gives the right of administration to the next of kin; the second gives it to the creditors, when the next of kin refuse or decline; and when the thirty days limited in the latter, for the next of kin to assume the trust, have expired, they stand on no better footing than creditors. The point is settled, at least, impliedly, in the case of *Cobb* v. *Newcomb*, 19 Pick. 336.

2. The evidence of the appellee was competent, and was properly admitted. 1 Greenl. Ev. § 118.

*E. Dickinson* replied.

FORBES, J.   In this case two objections are made to the decision of the learned judge who heard the appeal.

1. That the notice was insufficient, inasmuch as no citation was issued and served upon the appellant personally, previously to the appointment of an administrator by the judge of probate.

The Rev. Sts. *c.* 64, § 4, provide that administration shall be granted:

" First, to the widow or next of kin, or both, as the judge of probate shall think fit; and if they do not voluntarily either take or renounce the administration, they shall, if resident within the county, be cited by the judge for that purpose.

" Secondly, if the persons so entitled to administration are incompetent, or evidently unsuitable for the discharge of the trust, or if they shall neglect, without any sufficient cause, for thirty days after the death of the intestate, to take administration of his estate, the judge of probate shall commit it to one or more of the principal creditors, if there be any competent or willing to undertake the trust."

In the present case, the next of kin had neglected, for more than thirty days after the death of the intestate, to take administration on his estate, and it was contended, that under these circumstances, no citation was necessary. Upon a literal construction of the second paragraph above cited, this position would seem to be sustained; and yet its correctness may be doubted.   The first paragraph contains a general direction that the widow, and next of kin, shall be cited, if resident within the county; and by the statute of 1817, *c.* 190, § 14, it was provided, that after the expiration of thirty days from the death of the person intestate, in case the widow or next of kin should refuse or neglect to take out letters of administration, *being cited before the judge of probate for that purpose,* if resident within the county, the judge might

commit administration to some one or more of the principal creditors. It does not appear from the notes of the commissioners upon the revised statutes, that, in this respect, any change in the law was intended, and the apparent change may have arisen from a desire to render the language of the code more concise than was the language of the statute revised.

It was also contended, that in the proceedings before the judge of probate, the appellant renounced the administration. If a record had been made of the declaration of the appellant to the judge, it might have been an effectual renunciation, but in the absence of a record, it cannot have that effect.

The question then recurs, whether the public notice, which was ordered by the judge, and given to all persons interested in the estate, was a citation within the meaning of the statute. And we are of opinion that it was; especially, as the appellant had actual notice and did appear before the judge of probate to interpose objections against the granting of the prayer of the petition. In England the term "citation" is applied particularly to process in the spiritual courts; as the ecclesiastical courts, there, proceed by libel and citation, according to the course of the civil and canon law. In this country it has been defined "an official call or notice to appear in court;" and as a general rule, it is issued, and served upon a particular individual, who is thereby made a party to the proceedings. This is so in the case of citations to minors, to the creditors of poor debtors, to trustees, executors and administrators, and to persons who have fraudulently concealed or embezzled the estate of insolvent debtors, and in other instances. In these cases, the intention of the legislature is apparent from the objects which it had in view, and from the ends which it designed to accomplish. But there is another class of cases in which a direct personal notice is difficult, if not impracticable, and which may furnish an analogy to the present case. In proceedings *in rem* in courts of admiralty, the owners of the property libelled are not necessarily sought out, and served with personal notice. A monition is issued.

or, in other words, a general notice to all persons interested to appear and vindicate their claims; and all persons, who are interested, have a right to appear and become parties to the proceedings. In these, and in similar proceedings, it is not impossible, perhaps, for the libellant to ascertain who the person really interested is, but in many cases it is extremely difficult, even when resident within the jurisdiction of the court. The libellant is not presumed to be cognizant of the title of any particular individual, or class of persons. If the supposed owner were summoned, it might appear that he had no title, or if a *prima facie* title were shown, it might subsequently appear that others, not notified, had a better title; and, therefore, to prevent unnecessary delay and expense, a general notice is resorted to.

The like reasons, we think, apply in the present case. If a personal notice were held to be necessary, it would, in many cases, be difficult to ascertain upon whom the notice must be served. If the supposed widow of the intestate were summoned, and administration were committed to her, it might be true that there was never a legal marriage, and that the appointment was invalid. Difficulties might arise in ascertaining who were next of kin, each of whom would be entitled to a personal notice; and the proceedings would be, necessarily, attended with uncertainty, doubt and delay. Those who live within the county are generally well informed of the decease of an intestate, in the administration of whose estate they are interested; and they understand the usual course of proceedings in the settlement of intestate estates. This knowledge is sufficient, at least, to put them upon inquiry. And, practically, there can be but little danger that these interests will be compromised, by holding a general notice to be sufficient. Upon such notice, all who pretend to a right to administer may appear, their claims may be considered, and decided with very little expense or delay. The statute, in this as in other cases, must receive a reasonable construction; it does not define the manner in which the citation is to be made, but leaves that to the court, with no

other restriction, than that it shall be made in such a manner as will best accomplish the purpose for which the citation is directed. We believe, that in this respect the judge conformed to the practice of the courts of probate throughout the state, and in our opinion the practice is warranted by a reasonable construction of the statute.

2. The second objection is, that the evidence of the indebtedness of the intestate to the appellee was insufficient and ought to have been rejected.

We are of opinion that this objection ought not to prevail. The evidence offered by the appellee to prove his debt against the estate was clearly competent. This kind of evidence is, no doubt, liable to abuse, but its admissibility is too well established to be called in question. The witness testified that the charge on his books was the original entry, and that it was made at its date; that he presumed that he put this charge on the slate, from which it was transferred to his book of original entries. It is immaterial whether the charge was first made on the slate or not. *Faxon* v. *Hollis*, 13 Mass. 428; *Smith* v. *Sanford*, 12 Pick. 139. The residue of his statement might impair the confidence which the judge reposed in the evidence, but did not, we think, render it incompetent.

The exceptions are overruled and the case remitted to the judge of probate, in order that he may proceed in the settlement of the estate.